UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LATRECE LOCKETT,

    Plaintiff,

v().                                                    Case No. 8:07-cv-797-T-24 MSS

CHOICE HOTELS INTERNATIONAL,
INC., d/b/a CLARION HOTELS, and U.S.
CONSOLIDATED RESOURCES, LLC,

    Defendant.
_____/

**O R D E R**

This cause comes before the Court on Defendant, U.S. Consolidated Resources, LLC's Motion for Summary Judgment.[1] (Doc. No. 23.) Plaintiff has filed a response in opposition. (Doc. No. 30.)

**I.**    **Factual Background**

This case involves sexual harassment, retaliation, and private whistleblower claims that arose from Plaintiff Latrece Lockett's ("Lockett") employment at a Clarion Hotel (the "Hotel"). Lockett was employed at the Hotel beginning in August 2005. (Doc. No. 2, ¶ 8.) She started working at the Hotel as a café attendant, and after approximately eight months was transferred to the reservations department. While working in the reservations department, Lockett's immediate supervisor was Geneva Williams, who was in charge of reservations. Geneva Williams' supervisor was Debbie Mangual, the front desk manager. The Hotel's operations manager was

---

[1] Lockett brought this action against three Defendants: Choice Hotels International, Inc., U.S. Consolidated Resources, LLC, and Advantage Employer Solutions, Inc. On October 22, 2007, the Court dismissed Lockett's claims against Advantage Employer Solutions, Inc. with prejudice. (Doc. No. 19.) The instant motion was brought by Defendant U.S. Consolidated Resources, LLC, which owns the Clarion Hotel involved in the instant case. Accordingly, the instant motion applies only to Defendant U.S. Consolidated Resources, LLC.

Lillian Garcia.

Lockett's complaint alleges that during her employment at the Hotel, a co-worker by the name of Eric Watson sexually harassed her.  (Doc. No. 2, ¶ 10.)  Lockett alleges that starting sometime around April 2006, Mr. Watson began making sexual remarks to her every time she entered the Hotel's café area, which was where Mr. Watson worked.  Lockett also alleges that on at least two occasions, Mr. Watson touched her – on one occasion he tried to hug Lockett and on another occasion he touched Lockett on the buttocks.  Lockett further alleges that in addition to the sexual remarks and touching, Mr. Watson made gestures toward Lockett with his tongue on two or three occasions.  Due to Mr. Watson's actions, Lockett stopped going to the café for a period of about three weeks, but then resumed going to the café.

Lockett stated that Flavian Gomez, the café manager and Mr. Watson's supervisor, was present a few of the times that Mr. Watson made sexual remarks to her.  (Lockett Depo. at 40.)  Lockett said that she complained about these remarks to Mr. Gomez, and that Mr. Gomez told her he would speak with Mr. Watson, but Mr. Watson's behavior continued.  (Id. at 41.)  Lockett first lodged a formal complaint regarding Mr. Watson's behavior sometime in August of 2006, when she presented her allegations of sexual harassment to Debbie Mangual.  (Id. at 43-44.)  Mr. Watson's behavior continued, and a few weeks later, Lockett again lodged a complaint with Ms. Mangual.  (Id. at 45.)

On August 22, 2006, Lockett went to the Hotel's human resources manager, Jacqueline Gregory, to voice her complaint and concerns regarding Mr. Watson's behavior, because Lockett felt that Ms. Mangual wasn't adequately handling the situation.  (Id. at 46.)  According to Lockett, she told Ms. Gregory about Mr. Watson's behavior and also about how neither Mr. Gomez nor Ms. Mangual remedied the problem after she had complained about Mr. Watson to

2

both of them.  (Id.)  After speaking with Ms. Gregory, Lockett returned to her office area, and shortly thereafter was called back up to the human resources department.  (Id. at 46.)

Lockett returned to Ms. Gregory's office, where Ms. Gregory, Ms. Mangual, and Mr. Watson were present.[2]  (Id. at 48.)  At this meeting, Mr. Watson confronted Lockett about her allegations of sexual harassment.  (Id.)  Lockett states that Mr. Watson was calling her names and attacking her character, and at some point he "jumped in [her] face and acted like he was going to hit [her.]" (Id. at 51.)  At this point, Lockett told Mr. Watson "I have a boyfriend for you." (Id. at 52.)  Ms. Mangual then told Mr. Watson to leave the room so he could cool off.  (Id. at 53.)  Lockett also left the meeting and returned to her office area.  (Id. at 54.)

After the meeting in the human resources office, Mr. Watson went to the front desk area of the Hotel, near where Lockett worked, and began saying disparaging remarks about Lockett to the other employees.  (Id.)  At this point, Lockett called the Hotel's operations manager, Lillian Garcia, to report the recent events.  (Id. at 55.)  Then Ms. Mangual came into Lockett's office area and informed her that she was terminated for threatening Mr. Watson.  (Id. at 56.)  Mr. Watson was also terminated as a result of his behavior.  (Id. at 57.)

## II. Procedural Background

On September 14, 2006, Lockett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  After an investigation and attempts at conciliation, the EEOC issued Lockett a Notice of Right to Sue, which provided that "[t]he EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to

---

[2]There is conflicting testimony as to who called the meeting, the order of arrival, and who was in the room at certain times during the meeting, but it is clear from the testimony that a meeting did occur between Lockett, Mr. Watson, Ms. Mangual, and Ms. Gregory in Ms. Gregory's office.

some or all of the matters alleged in the charge." (Doc. No. 30, Exh. D.) On April 13, 2007, Lockett filed an Amended Complaint in the state court. (Doc. No. 2) On May 8, 2007, this action was removed to this Court. (Doc. No. 1.)

Lockett's complaint alleges five separate causes of action for violations of the Florida Civil Rights Act ("FCRA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Florida's Private Whistleblower's Act. Count I of the complaint alleges sexual harassment in violation of the FCRA, Count II alleges retaliation in violation of the FCRA, Count III alleges sexual harassment in violation of Title VII, Count IV alleges retaliation in violation of Title VII, and Count V alleges retaliation in violation of Florida's Private Whistleblower's Act. On October 22, 2007, the Court dismissed Lockett's claims against Advantage Employer Solutions, Inc. with prejudice. (Doc. No. 19.)

Defendant U.S. Consolidated Resources, LLC filed the instant motion on March 21, 2008. (Doc. No. 23.) On April 14, 2008, Lockett filed her response in opposition. (Doc. No. 30.) The Court notes that because the instant motion was filed only by Defendant U.S. Consolidated Resources, LLC, the Court considers its merits only as to the dispute between Lockett and Defendant U.S. Consolidated Resources, LLC.

**III.    Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**IV.** **Analysis**

Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of sexual discrimination within the meaning of Title VII. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65-67 (1986). Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA, because the Florida act was patterned after Title VII. Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

Defendant U.S. Consolidated Resources, LLC ("Defendant") argues that it is entitled to summary judgment on all of Lockett's claims. Specifically, Defendant argues that, as to Lockett's claims for sexual harassment, there is no evidence that the alleged harassment was so severe and pervasive that it affected a term or condition of her employment at the Hotel, and also that Defendant attempted to take prompt remedial action upon notice of the alleged sexual harassment. As to Lockett's claims for retaliation, Defendant contends that it has a legitimate, non-retaliatory reason for terminating Plaintiff, and Plaintiff cannot show that such reason was pretextual. The Court will address each argument in turn.

    *A.*     *Sexual Harassment Claims*

Lockett asserts claims for sexual harassment in Counts I and III of her amended complaint under the FCRA and Title VII, respectively. To establish a claim for sexual harassment, a plaintiff must allege and prove that: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) *respondeat superior*. See Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir. 1982). Here, the fourth and fifth elements are at issue.

Defendant first argues that it is entitled to summary judgment on Lockett's sexual harassment claims because the alleged harassment was not so severe and pervasive as to alter the terms and conditions of Lockett's employment. Whether harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of an employee's employment includes an objective and a subjective component. Harris v. Forklift Systems, Inc., 510 U.S. 17, 20 (1993). The employee must subjectively perceive the environment to be abusive, and the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment. See id at 21. The Supreme Court in Harris stated that:

> Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or is a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. at 23. Courts therefore consider the alleged conduct "in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).

In the instant case, the Court finds that based on the totality of the circumstances, Lockett

6

failed to produce sufficient evidence to create an issue of fact as to whether she was subjected to a hostile or abusive work environment. First, the only evidence tending to show that Lockett subjectively perceived the environment as hostile are her complaints and the fact that she stopped going to the café for a period of approximately three weeks. However, she later resumed going to the café and continued to do so despite the fact that Mr. Watson's behavior continued. Turning to the objective factors listed in Harris, Mr. Watson's conduct was frequent, but was not by any means severe, physically threatening, or humiliating. Mr. Watson told Lockett what he would like to do to her sexually, what positions he would use if he were to have sex with her, that her boyfriend was not doing her right, and that she "needed to get with a real guy." (Lockett Depo. at 33-34.) While these types of comments are certainly offensive, they do not rise to the level of being severe, physically threatening, or humiliating. Additionally, nothing shows that Mr. Watson's conduct interfered at all with Lockett's work performance. Lockett worked in the reservations area, which was a separate area of the Hotel from Mr. Watson's location in the café, and there is no evidence suggesting that Lockett ever found it difficult to work in the reservations area due to Mr. Watson's behavior. Accordingly, the Court finds that no material fact exists as to whether the alleged harassment was so severe and pervasive as to alter the terms and conditions of Lockett's employment.

 Defendant next argues that it is entitled to summary judgment because it took prompt remedial action upon learning of Lockett's allegations of sexual harassment. An employer can be directly liable for its employee's sexual harassment of a co-worker when the employer knew, or should have known, of the harassment and failed to take immediate and appropriate corrective action. Fleming v. Boeing Co., 120 F.3d 242, 246 (11th Cir. 1997)(citations omitted). In the instant case, Defendant does not appear to dispute that it had actual notice, and instead focuses

on its responses to Lockett's complaints, arguing that they were appropriate. Likewise, Lockett does not appear to dispute that Defendant's response was immediate, and also focuses on Defendant's responses to her complaints, arguing that they were inappropriate. Accordingly, the issue before this Court is whether there is a genuine issue of material fact as to whether Defendant responded appropriately to Lockett's complaints. The Court finds that there is not.

According to Lockett, Defendant's response to her complaints was too flawed to be considered appropriate remedial action. First, Lockett argues that Flaviano Gomez (Mr. Watson's supervisor) handled the situation inappropriately, because after her first informal complaint to Mr. Gomez, "it does not appear that anything was said or done to Watson and the harassment continued." The Court is not persuaded by this argument. Lockett does not cite to any evidence before this Court that shows what Mr. Gomez did or did not do, and an absence of evidence is not enough to survive a motion for summary judgment.[3] Fed. R. Civ. P. 56(e).

Second, Lockett argues that Debbie Mangual's response to her first formal complaint was inappropriate, because when she first told Ms. Mangual about Mr. Watson's conduct, Ms. Mangual went to Mr. Gomez and told him to "contravene company policy by having Gomez tell Watson that Plaintiff was complaining about him." The Court finds this interpretation of the facts to be misleading – Ms. Mangual actually stated that after Lockett's first complaint, she went to Mr. Gomez to inform him of Mr. Watson's behavior, and asked Mr. Gomez to speak with Mr. Watson about such behavior. (Mangual Depo. at 18-19.) There is no evidence that Ms. Mangual told Mr. Gomez to tell Mr. Watson that Lockett was complaining about him.

Lockett also takes issue with the fact that during the time between Lockett's first

---

[3] In various places throughout Lockett's response, she cites to the deposition testimony of Flaviano Gomez. The Court notes, however, that the transcript of Mr. Gomez's deposition was never filed with the Court.

8

complaint to Ms. Mangual and the subsequent meeting in the human resources department, Ms. Mangual never spoke with Mr. Watson herself, never inquired as to whether Mr. Watson's behavior had continued, and never asked any other female employees whether Mr. Watson had been harassing them as well.  However, during this time period Lockett neither gave any indication nor made any complaint that Mr. Watson's behavior was continuing.  In fact, just two days after Lockett's first complaint, Ms. Mangual saw Lockett and Mr. Watson sitting at a table together in the café talking and laughing.  (Mangual Depo. at 21.)  Accordingly, the Court finds that it was not unreasonable for Ms. Mangual to conclude that her actions were appropriate and that no further action was necessary on her part.

Lockett's final argument is that it was inappropriate for there to be a meeting held where both she and Mr. Watson were present in the same room.  Lockett seems to base this argument on what occurred during the course of the meeting, namely, that Mr. Watson acted as though he was going to strike her, prompting her to respond with "I have a boyfriend for you." (Lockett Depo. at 51-52.)  The Court declines to find that the mere holding of the meeting was, in and of itself, inappropriate – it was a part of the investigatory process.  Moreover, the final outcome of the entire ordeal was that Mr. Watson was terminated from his position, and "where the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow." Walton v. Johnson & Johnson Services, Inc., 347 F.3d 1272, 1288 (11th Cir. 2003).  The Court agrees with Defendant that there is no genuine issue of material fact as to whether Defendant responded appropriately to Lockett's complaints, and finds that a reasonable jury could only conclude that Defendant took prompt and remedial action in response to Lockett's complaints.  Defendant's motion for summary judgment on Lockett's claims for sexual harassment (Counts I and III of her

amended complaint) is **GRANTED**.

   *B.     Retaliation*

Lockett asserts claims for retaliation in Counts II and IV of her amended complaint under the FCRA and Title VII, respectively. In Count V of her amended complaint, Lockett asserts a claim under Florida's Whistleblower Act. Both the retaliation and whistleblower claims are based on Lockett's allegation that she was terminated due to her complaints about Mr. Watson's conduct. The analysis used in Title VII retaliation cases applies to Florida Whistleblower's Act claims. Sierminski v. Transouth Financial Corp., 216 F.3d 945, 950 (11th Cir. 2000).

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal link between her protected activity and that adverse employment action. See Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997)(citations omitted). Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse employment action. E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1572 (11th Cir. 1993). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the reasons are pretextual. Id. Here, Defendant does not seem to dispute that Lockett has established a *prima facie* case of retaliation. Defendant instead focuses its argument on its proffered non-retaliatory reason for terminating Lockett's employment, and argues that Lockett cannot meet her burden of showing that this reason was pretextual.

In the instant case, the Court finds that Defendant has clearly proffered a legitimate, non-retaliatory reason for terminating Lockett's employment. Specifically, Lockett was terminated because of her statement to Mr. Watson that "she has a boyfriend for him," during the meeting in

10

the human resources office, which Defendant perceived to be a threat in violation of Defendant's policies. Therefore, Lockett bears the burden of offering enough probative evidence so that a reasonable jury might conclude that Defendant's reason for termination (here, threats) were a pretext for retaliation. See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). In the summary judgment context, this inquiry is conducted by determining whether a jury "could reasonably infer [retaliation] if the facts presented by [Lockett] remain unrebutted." Id.

Lockett argues that there are genuine issues of material fact as to whether Defendant's proffered reasons are merely pretext for a retaliatory decision. To wit, that there are fact questions as to what she said to Mr. Watson and how her words could reasonably have been perceived. The Court disagrees. Lockett stated in her deposition testimony that in response to Mr. Watson's aggressive behavior toward her during the meeting, she told him "I have a boyfriend for you." (Lockett Depo. at 52.) She also stated that she remembered that part of the meeting clearly and that those were her exact words. (Id.) As to whether Defendant incorrectly perceived the words to be a threat, that is not the issue here. The issue, instead, is whether Defendant thought that Lockett threatened Mr. Watson when she told him "I have a boyfriend for you." Silvera v. Orange County School Bd., 244 F.3d 1253, 1261 (11th Cir. 2001); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997)("[F]ederal Courts do not sit to second-guess the business judgment of employers . . . a plaintiff may not establish that an employer's proferred reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer."). About this there is no dispute in the evidence – all of the evidence on the issue shows that Defendant thought that Lockett threatened Mr. Watson, and therefore terminated her employment because

of such threat. There is no contrary evidence, and thus no genuine issue of material fact. Accordingly, Defendant's motion for summary judgment on Lockett's claims for retaliation and whistleblower act violations (Counts II, IV, and V of her amended complaint) is **GRANTED**.

## V.      Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**. The Clerk is directed to enter judgment for Defendant U.S. Consolidated Resources, LLC.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of June, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge


Copies to:
Counsel of Record